**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No. 1:22-cv-002201-PAB-MEH**

DANIELLE JURINSKY, individually, and on behalf of all others similarly situated,

    Plaintiffs,

v.

ARAPAHOE COUNTY DEPARTMENT OF HUMAN SERVICES, DIVISION OF CHILD & ADULT PROTECTION SERVICES, et al.,

    Defendants.

---

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO STAY AND VACATE THE SCHEDULING CONFERENCE**

---

Defendants Arapahoe County Department of Human Services ("ACDHS"), former ACDHS caseworker Robin Niceta, in her official capacity, ACDHS Division Manager Michelle Dossey, in her official capacity, and the Arapahoe County Board of County Commissioners (the "Board") (collectively, the "Defendants"), through counsel, submit this Reply in Support of their Motion to Stay and Vacate the Scheduling Conference [Doc. #26].

**Introduction**

Ms. Jurinsky, an Aurora City Councilmember, brings this putative class action on behalf of herself and others "similarly situated," stemming from an investigation into child abuse allegations against her prompted by an anonymous phone call to ACDHS's child abuse hotline. Am. Compl. [Doc. # 17] ¶ 37. The investigation was ultimately dismissed and no dependency and neglect action was ever filed against Mr. Jurinsky, nor was her child ever removed from her care. *See generally* Am. Compl. ¶¶ 36-56 (no allegations that child was removed or legal action taken).

However, because ACDHS later discovered the anonymous call was made by then-employee Robin Niceta, who was in an intimate relationship with the former Aurora Police Chief, against whom Ms. Jurinsky had made negative public comments, Ms. Niceta was arrested and now faces criminal charges. *See* Ex. 2 to Resp. to Mot. (probable cause arrest affidavit).[1] Notwithstanding the highly individualized allegations regarding Ms. Niceta's alleged private conduct targeting Plaintiff, Ms. Jurinsky nonetheless brings claims on behalf of "all similarly situated individuals" for "all children, parents, and caretakers who have had their constitutional rights violated in the course of an Arapahoe County Department of Human Services, Division of Child and Adult Protection Services, Investigation." Am. Compl. ¶ 504-05. Plaintiff's 546-paragraph Amended Complaint contains hundreds of paragraphs devoted to **26 unnamed putative class members.**

Plaintiff's Response makes clear that she intends to seek discovery related to these 26 additional unnamed class members, at least eleven of whom have claims stemming from allegations over two-years old (beyond the statute of limitations) and all of whom allege grievances related to ongoing or completed state court actions, which would therefore be subject to well-established jurisdictional defenses such as *Younger* abstention and the *Rooker-Feldman* doctrine. Plaintiff's Response also provides examples of the far-reaching discovery Plaintiff intends to seek on her own behalf which will invariably involve onerous requests for communications by and among ACDHS staff, requests related to training and policies of the Department (which will significantly overlap with state policies and training, as ACDHS is an arm of the State), and discovery directed to the Arapahoe County Board of Commissioners ("BOCC") regarding their

---

[1] Ms. Jurinsky has sued Ms. Niceta individually in state court for these acts. *See* Ex. A-1 to Mot. to Dismiss [Doc. #25]. The present lawsuit only names Ms. Niceta in her official capacity.

"involvement in, knowledge and approval of, or control over the other Defendants' unconstitutional conduct." Resp. at 6. These examples of the discovery Plaintiff will seek not only illustrate the burdens of responding to such onerous requests, but they also highlight that Plaintiff will seek information from parties who are improper legal entities to be sued in the first instance. *See, e.g.,* Mot to Dismiss at 4-8 (Ms. Niceta's alleged private conduct was not in her professional capacity and therefore not under color of state law, rendering *all* Defendants as improperly named) & 13-14 (explaining well-established law that the BOCC is not the policymaker for ACDHS).

Simply put, this case does not involve run-of-the-mill discovery requests and a standard motion to dismiss arguing Plaintiff failed to allege sufficient facts. Rather, Plaintiff asserts constitutional claims on behalf of herself and 26 other individuals who feel aggrieved based upon their experiences with ACDHS. In response, Defendants have asserted a wide range of defenses, including that Ms. Niceta was not acting under color of state law when she made this anonymous report of child abuse to a public hotline. Because Plaintiff's claims are all premised upon Ms. Niceta's private acts, Defendants are all improper parties because no state action has been pled to support *any* of Ms. Jurisnky's Section 1983 claims. Although stays of discovery are generally disfavored, "discovery may be inappropriate while threshold issues of immunity or jurisdiction are being resolved." *Love v. Grashorn*, No. 21-cv-02502-RM-NRN, 2022 WL 1642496, at *2 (D. Colo. May 24, 2022). Here, Defendants' many bases for dismissal include Plaintiff's inability to allege a state action for this private retributive conduct. *See Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995) (noting the "'under color of state law' requirement is a 'jurisdictional requisite for a § 1983 action'") (citations omitted). Although a failure to establish the under color of state law requirement is brought under Fed. R. Civ. P. 12(b)(6) instead of 12(b)(1), it nonetheless

3

implicates jurisdictional issues and is very much a "threshold issue," rendering discovery inappropriate until the threshold issue is adjudicated.

Further underscoring that this is no ordinary case, Plaintiff and her counsel have sought out and obtained significant media attention, including through press conferences regarding this litigation. *See, e.g.,* Noelle Phillips & Nick Coltrain, *Aurora councilwoman sues over unfounded child abuse report, says Arapahoe County DHS is plagued by "evil,"* DENVER POST (Aug. 25, 2022), https://www.denverpost.com/2022/08/25/danielle-jurinksy-robin-niceta-lawsuit-arapahoe-county-dhs/ ("Jurinsky, her lawyers and about a dozen other people held a news conference to lambast Niceta and to portray her as emblematic of broader corruption within Arapahoe County's human services department."). Although Plaintiff only asserts official capacity claims, her Amended Complaint disparages other public servants within the ACDHS for whom being sued (or being caught up in a lawsuit against the ACDHS) is very real and stressful. Plaintiff should not be permitted to seek wide-ranging information to push her public narrative disparaging the ACDHS and its employees when the pending Motion to Dismiss will likely resolve all claims, particularly where Defendants are all improper parties and where the Motion raises issues relating to this Court's jurisdiction. *See* Fed. R. Civ. P. 26(c) (permitting trial court to "make any order which justice requires to protect a party . . . from annoyance, embarrassment, oppression or undue burden or expense."). Here, justice very much requires this Court issue a stay to protect ACDHS and its employees from burdensome discovery before their Motion to Dismiss is adjudicated. A stay here would enable ACDHS employees to continue performing their job duties without the fear that their name will be dragged into the press because they sent an email two years ago related to one of the 26 other putative class plaintiffs whose claims may not be remotely viable. Both Fed. R. Civ. P.

4

26(c) and the *String Cheese* factors heavily favor staying discovery in this matter.

**I.      Plaintiff's interest in proceeding expeditiously and the potential prejudice of any delay are heavily outweighed by the burden on Defendants.**

Plaintiff argues she has an interest in proceeding expeditiously but fails to establish how she will be prejudiced if the discovery process is stayed until Defendants' Motion to Dismiss is adjudicated. Ms. Niceta is currently facing criminal charges based on the conduct alleged in the Amended Complaint, and Plaintiff has a pending state court action against Ms. Niceta individually, alleging slander, libel, and intentional infliction of emotional distress. *See* Ex. A-1 to Mot. to Dismiss [Doc. #25]. Thus, Ms. Jurinsky has recourse against Ms. Niceta for her individual, private actions irrespective of the outcome here. A stay will not prejudice Plaintiff's ability to litigate this case or her private action against Ms. Niceta or stymie the criminal prosecution of Ms. Niceta.

Importantly, if Plaintiff is able to convince the Court that Ms. Niceta was acting under color of state law when she anonymously called the state's public child abuse hotline because she was angry about what Ms. Jurinsky had said about her partner, Plaintiff will have the opportunity to proceed with her efforts to obtain the wide-range discovery referenced in her Response. A delay of some months will not result in significant prejudice to Ms. Jurinsky. Moreover, to the extent Ms. Jurinsky argues a stay should be denied because of the "urgent need to redress [the] harms" against "dozens of children" of the putative class members (Resp. at 5), these class members have allowed their purported claims to languish for years. Only now, when a former ACDHS caseworker makes a retaliatory phone call to a public child abuse hotline from her private cell phone do these putative class members suddenly seek to hitch their grievances to Ms. Jurinsky's

claims.[2] If these class members can wait years to seek to assert their grievances, a stay of Ms. Jurinsky's claims will not create any prejudice for them.

In contrast, the burden on Defendants if discovery proceeds before adjudicating the Motion to Dismiss is substantial. Plaintiff's Response outlines several categories of discovery she intends to seek. Given the litigious posture of this case and the intention to seek discovery on behalf of both herself *and* 26 putative class members, Defendants anticipate Plaintiff will seek thousands upon thousands of pages of documents in discovery, which will include internal communications relating to any of these 26 individual cases. Notably, numerous caseworkers encounter a dependency and neglect case throughout its progression. Thus, Plaintiff will likely seek a trove of communications sent to or received by *dozens* of individual ACDHS employees. The time to review these communications for privileges and responsiveness will be immense.

Additionally, given Plaintiff's use of the media as a mouthpiece for her grievances, individual caseworkers and other ACDHS public servants fear their names will be dragged through the mud merely because they happened to send an email two years ago related to a case that has been caught up in Plaintiff's wide net. ACDHS caseworkers already face the very difficult tasks of protecting children (often in instances of severe abuse) and guiding children to the best possible outcome. The fear of having their communications in child dependency and neglect actions politicized could have a chilling effect on these caseworkers' ability to do their jobs. In the unlikely

---

[2] Many of these unnamed putative class members had no contact with Ms. Niceta. Thus, there is not even a colorable nexus between Plaintiff and some of the unnamed plaintiffs for whom she intends to seek discovery. Indeed, *all* unnamed plaintiffs had legal actions initiated against them while Plaintiff never had any such action initiated against her. Her claim against Defendants is based on ACDHS's two-week child abuse investigation before closing the case and subsequently involving law enforcement, leading to the arrest of the person who made the anonymous report.

event Plaintiff is able to establish this Court's jurisdiction over her claims and any portion of her claims are allowed to proceed, *only then* will it be appropriate to evaluate the scope of the burden to impose upon ACDHS and its employees. Protecting ACDHS caseworkers from the "annoyance, embarrassment, oppression, or undue burden" is alone a sufficient basis for this Court to stay discovery until the Motion to Dismiss is adjudicated, especially where Plaintiff's allegations of state action are so tenuous. *See* Fed. R. Civ. P. 26(c).

Furthermore, the hefty burden on Defendants does not end at a request for communications. Sorting through the policies and trainings will also be a significant task because ACDHS is an arm of the State. Thus, the majority of trainings and policies and relevant guidance come from the State, not the County, but locating and parsing this information will be time-consuming. Finally, for her own case, Plaintiff intends to seek information regarding "what Defendant ACDHS and Defendant Dossey knew about Defendant Niceta's honesty and credibility," among other things. Resp. at 5. Again, this request highlights the burdens discovery will place on public servants by seeking their communications, documents, and depositions---all to account for an employee's *private actions* in an effort to seek *private retribution* before a court adjudicates Defendants' Motion to Dismiss on this very basis. Importantly, where defendants are improperly named in Section 1983 litigation because their actions were not taken under color of state law, a stay of discovery is warranted. *See, e.g., Barnes v. Timmons*, No. 12-cv-01042-WJM-KMT, 2012 WL 4478977, at *4 (D. Colo. Sept. 28, 2012) ("Thus, the court finds that Defendant Timmons would be subject to a significant burden if he were forced to proceed with discovery only to be dismissed from this action as a patently improper party."). Plaintiff's insistence on including the BOCC in this litigation is particularly problematic because the BOCC is an improper party both because

7

Niceta's actions were not under color of state law and because the BOCC does not make the policies for the ACDHS, which is an arm of the State. *See* Mot. to Dismiss [Doc. #24] at 13-14. If discovery proceeds, Plaintiff will seek information from the BOCC to determine "the extent of [its] involvement in, knowledge and approval of, or control over the other Defendants' unconstitutional conduct." Resp. at 6. This will presumably involve significant requests from current and past members of the BOCC. The same reasoning for granting stays where immunity defenses are invoked applies here:

> If a Government official is to devote time to his or her duties, and to the formulation of sound and responsible policies, it is counterproductive to require the substantial diversion that is attendant to participating in litigation and making informed decisions as to how it should proceed. Litigation, though necessary to ensure that officials comply with the law, exacts heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the Government.

*Barnes*, 2012 WL 4478977, at *2 (quoting *Ashcroft v. Iqbal*, 556.U.S. 662, 685 (2009)).

In sum, the burden on Defendants greatly exceeds the standard burdens of discovery. These burdens are not hypothetical; they are real, significant, and stressful. Defendants seek to dismiss on grounds that Plaintiff has not and cannot state a threshold prerequisite to any Section 1983 action that the claimed unconstitutional conduct was taken under color of state law. Defendants should not be subjected to the burdens of discovery unless and until Plaintiff's claims are deemed legally able to proceed.

## II.     Convenience to the court also supports a stay.

Here, convenience to the Court strongly supports a stay. "A stay of discovery pending the determination of a dispositive motion is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources." *Blixseth v. Cushman & Wakefield of Colorado, Inc.*, No. 12-cv-00393-PAB-KLM, 2012 WL 3962800, at *1

8

(D. Colo. Sept. 11, 2012) (internal quotations and citations omitted). Moreover, stays may be appropriate where "resolution of a preliminary motion may dispose of the entire action." *Id*; *see also* 8 Charles Alan Wright, et al., *Federal Practice and Procedure* § 2040, at 521-22 (2d ed. 1994) ("[W]hen one issue may be determinative of a case, the court has discretion to stay discovery on other issues until the critical issue has been decided."). Because the motion to dismiss is likely to be dispositive of Plaintiff's entire case, the Court's convenience will be served by a brief stay. In contrast, there are likely to be significant and ongoing discovery disputes given Plaintiff's position that she is entitled to seek discovery on behalf of 26 unnamed putative class members related to the specific facts and circumstances of those cases. Notably, Plaintiff does not have standing to assert claims on behalf of un-named class members. *See Cunningham v. Birch*, No. 16-cv-02353-NYW, 2017 WL 1243020, at *3 (D. Colo. Feb. 17, 2017). She therefore should not be permitted to seek discovery related to claims she cannot assert. This is but one of many discovery disputes this Court will have to adjudicate while the Motion to Dismiss is pending. A brief stay will allow the Court to wait and see if it needs to adjudicate any discovery dispute at all—and if so, a ruling on the Motion to Dismiss could significantly limit or focus areas appropriate for discovery.

**III.     The interests of persons not parties to the civil litigation strongly supports a stay.**

As discussed above, ACDHS employs dozens of caseworkers who are likely to be subjected to the burdens of discovery, both to assist counsel with locating and reviewing responsive documents and also as potential witnesses for their roles in Ms. Jurisnky's case and in any of the unnamed 26 putative class members' cases. Ms. Jurinsky and her counsel have held press conferences and repeatedly availed themselves of the media in order to push their narrative that Ms. Jurinsky and others have been harmed by the ACDHS. There is no reason to expect this

conduct will change or that individual ACDHS public servants who happened to work on a case with the goal of protecting a child will not find their names in the limelight. These individuals are not parties to the litigation but very much have an interest in their privacy and the ability to do their jobs unimpeded by the political motivations of others. These individual public servants have a significant interest in staying this discovery unless and until a court determines any of Ms. Jurinsky's claims may proceed. Thus, this factor heavily weighs in favor of a stay.

### IV. The public interest does not support a stay.

Defendants agree that the "public interest favors the prompt *and efficient* handling of all litigation." Resp. at 8 (quoting *Boden v. Hmshost Corp.,* No. 15-cv-00606-CMA-KMT, 2015 WL 3826725, at *5 (D. Colo. June 19, 2015)) (emphasis added). Here, the efficient handling of this litigation strongly favors a stay for the reasons outlined *supra at* 8-9 and because the Motion to Dismiss is likely dispositive of all Plaintiff's claims. Moreover, even if this factor weighed in Plaintiff's favor—which it does not—it is substantially outweighed by the other *String Cheese* factors for the reasons discussed above.

WHEREFORE, the Defendants respectfully request that the Court stay all discovery pending resolution of the Defendants' Motion to Dismiss.

Submitted this 8th day of November, 2022.

**Arapahoe County Attorney's Office**

By:   *s/Rebecca M. Taylor*
Writer Mott
Deputy County Attorney
Rebecca M. Taylor
Assistant County Attorney
5334 S. Prince Street, Littleton, CO 80120-1136
Tele: 303-795-4639

             E-mail: Wmott@arapahoegov.com
             E-mail: Rtaylor@arapahoegov.com

*Attorneys for Defendants*

### Certificate of Service

 This is to certify that on the 8th day of November 2022, I electronically filed the foregoing **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO STAY AND VACATE THE SCHEDULING CONFERENCE** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address(es):

Elliot A. Singer
elliot@conduit.law


             *s/ Stacy Hines*
             Stacy Hines, Paralegal
             Arapahoe County Attorney's Office