IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 22-cv-02201-PAB-MEH

DANIELLE JURINSKY, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

ARAPAHOE COUNTY DEPARTMENT OF HUMAN SERVICES, DIVISION OF CHILD AND ADULT PROTECTION SERVICES,
ROBIN NICETA,
MICHELLE DOSEY, and
ARAPAHOE COUNTY BOARD OF COUNTY COMMISSIONERS,

    Defendants.

---

# ORDER

---

This matter comes before the Court on Defendants' Motion to Dismiss Plaintiff's Amended Complaint [Docket No. 24]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND[1]

Plaintiff Danielle Jurinsky brings this action on behalf of herself and all others similarly situated against the Arapahoe County Department of Human Services, Division of Child and Adult Protection Services ("ACDHS"), the Arapahoe Board of County

---

[1] The facts below are taken from plaintiff's amended complaint (hereinafter referred to simply as the "complaint"), Docket No. 17, and are presumed to be true, unless otherwise noted, for purposes of ruling on defendants' motion to dismiss.

Commissioners ("the Board"), ACDHS Division Manager Michelle Dossey[2], and former ACDHS employee Robin Niceta.  Docket No. 17 at 2-3, ¶¶ 6-9.  ACDHS is tasked with receiving reports of child abuse and neglect and sometimes separates children from their parents or caretakers.  *Id.* at 3-4, ¶¶ 12, 15-17.  ACDHS operates a "child and adult protection hotline."  *Id.* at 4, ¶ 18.  The Board "directly supervises, directs, and oversees all Arapahoe County Departments," including ACDHS.  *Id.* at 9, ¶ 29.  Ms. Jurinsky alleges that ACDHS, Ms. Dossey, and Ms. Niceta are "subject to [the Board's] authority and control" and that the Board is "legally and jointly liable for the conduct of all other Defendants."  *Id.* at 10, ¶¶ 31, 33.

Ms. Jurinsky alleges that, on January 28, 2022, Ms. Niceta placed an anonymous call to ACDHS claiming that she had witnessed Ms. Jurinsky sexually abusing her son.  *Id.* at 11, ¶ 37.  Ms. Niceta was an employee of ACDHS at the time that she placed the anonymous call to ACDHS, and Ms. Jurinsky alleges that, because of Ms. Niceta's experience as an ACDHS employee, Ms. Niceta "knew exactly the false information she had to provide in order to trigger a 'referral,' which would open up a full investigation" by ACDHS.  *Id.* at 11-12, ¶¶ 38-39.  Ms. Jurinsky alleges that, the day after making the anonymous tip, Ms. Niceta "attempted to interfere with the investigation when she requested that this investigation be assigned to her."  *Id.* at 13, ¶ 53.  Ms. Jurinsky further alleges that Ms. Niceta "either accessed or attempted to access –for the purposes of altering, destroying, or fabricating evidence– [ ] ACDHS's investigatory file and other documents associated with its internal reporting system."  *Id.* at 13-14, ¶ 54.

---

[2] The caption of the amended complaint spells this defendant's last name as "Dosey," but the body of the complaint, motion to dismiss, response, and reply spell this defendant's last name as "Dossey."  Docket Nos. 17, 24, 33, 35.

Shortly after Ms. Niceta's call, ACDHS contacted Ms. Jurinsky, who informed ACDHS that the allegations were likely made in retaliation against her and provided the name of at least one individual who she believed could have made the false reports. *Id.* at 12, ¶¶ 45-47. However, ACDHS did not investigate the individual that Ms. Jurinsky identified as the possible source of the false report and did not turn over the allegations regarding false reporting to law enforcement authorities. *Id.* at 12-13, ¶¶ 48-49. Ms. Jurinsky alleges that ACDHS knew that recently she had publicly criticized then-Aurora Police Chief Vanessa Wilson, who was in an intimate relationship with Ms. Niceta. *Id.* at 13, ¶¶ 50-52. Despite this knowledge, ACDHS did not conduct any internal investigation regarding Ms. Niceta's involvement with the false tip. *Id.*, ¶ 52.

Ms. Jurinsky brings four claims against all defendants: (1) deprivation of procedural due process; (2) deprivation of substantive due process; (3) violation of 42 U.S.C. § 1983; and (4) deprivation of rights protected by equal protection clause. *Id.* at 73-82, ¶¶ 517-546. The defendants filed a combined motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Docket No. 24.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). The Court must "accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007). However, if a complaint's allegations are "so general that they

3

encompass a wide swath of conduct, much of it innocent," then the plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (alterations omitted).

## III.  ANALYSIS

The complaint includes allegations by Ms. Jurinsky on her behalf and on behalf of twenty four putative class members. Docket No. 17 at 10-70, ¶¶ 36-503. Defendants seek to dismiss Ms. Jurinsky's claims and, upon dismissing Ms. Jurinsky's claims, seek to dismiss the class's claims as well. Docket No. 24 at 14. "A putative class action complaint should be dismissed if the named plaintiff's individual claims fail to state a claim for relief." *Parrish v. Arvest Bank*, 717 F. App'x 756, 760 (10th Cir. 2017) (unpublished) (citing *Robey v. Shapiro, Marianos & Cejda, L.L.C.*, 434 F.3d 1208, 1213 (10th Cir. 2006)). Therefore, the Court will analyze whether Ms. Jurinsky's complaint plausibly alleges a claim for relief for each of her four causes of action based on her individual claims.

### A.  Documents Outside the Complaint

In their filings, the parties repeatedly reference documents outside of the complaint. *See, e.g.,* Docket No. 24 at 2; Docket No. 33 at 4, 13 n.2; Docket No. 37 at 8 nn.1-2. However, when ruling on a motion to dismiss, a court generally may not consider evidence beyond the well-pled allegations in the operative complaint. *See Waller v. City and Cnty. of Denver,* 932 F.3d 1277, 1282 (10th Cir. 2019). Although the

Tenth Circuit has recognized a "limited exception" to this rule, which allows courts to consider documents referred to in the complaint that are central to the plaintiff's claim and whose authenticity is not disputed, *id.*, that exception does not apply to any of the documents referenced by the parties here because none of them are referred to in the complaint. Accordingly, the Court will consider only the well-pled allegations contained in Ms. Jurinsky's complaint when ruling on defendants' motion to dismiss.

### B.  Actions of Ms. Niceta

Ms. Jurinsky's first, second, and fourth claims are for violations of her constitutional rights brought under 42 U.S.C. § 1983, and her third claim is for a violation of § 1983. Docket No. 17 at 73-84, ¶¶ 517-46. To state a claim under § 1983, Ms. Jurinsky must allege that she was deprived of a right secured by the Constitution or laws of the United States and that this deprivation was committed under color of state law. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). Because "[t]he 'under color of state law' requirement is 'a jurisdictional requisite for a § 1983 action,'" *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995) (citation omitted), the Court first turns to the question of whether Ms. Niceta acted under color of state law. "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); see also *Jojola*, 55 F.3d at 493 ("there must be a real nexus between the employee's use or misuse of their authority as a public employee[] and the violation allegedly committed by the defendant") (quotation and citation omitted).

5

The complaint alleges that Ms. Niceta made an anonymous call to ACDHS to falsely report that Ms. Jurinsky was abusing her son.  Docket No. 17 at 11, ¶ 37.  Defendants argue that placing the call was not an action taken under color of state law because "the ACDHS hotline is available to the general public" and that, even though Ms. Niceta was an ACDHS employee, placing the call was "a private act, which was antithetical to [Ms. Niceta's] job responsibilities as a caseworker."  Docket No. 24 at 5-6.  Ms. Jurinsky responds that Ms. Niceta "acted within the course of her employment . . . while carrying out the responsibilities of an Arapahoe County caseworker,"[3] utilizing the training she had received as an employee.  Docket No. 33 at 2-3.  However, the fact that an individual employed by the state committed a tort "does not, *ipso facto*, warrant attributing all of the employee's actions to the state."  *Jojola*, 55 F.3d at 493.  In *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1156 (10th Cir. 2016) (quotation and citation omitted), the Tenth Circuit found that the plaintiff had not established that defendants had acted under color of state law where the employees' actions were ones that any citizen could take and were therefore not an exercise of "power possessed by virtue of state law and made possible only because [defendants were] clothed with the authority of state law."  Although Ms. Jurinsky's complaint alleges that Ms. Niceta "knew exactly the false information she had to provide" to trigger an investigation, Docket No. 17 at 12, ¶ 39, it does not allege that Ms. Niceta took any action beyond what any other citizen

---

[3] Ms. Jurinsky points out that Colorado law requires caseworkers like Ms. Niceta to report child abuse, and argues that because Ms. Niceta, while working for ACDHS, "made a report Colorado law required her to submit had the events actually occurred, she was acting under state law."  Docket No. 33 at 3 (citing Colo. Rev. Stat. § 19-3-304(2)(m)).  However, that statute forbids caseworkers from making false reports.  Colo. Rev. Stat. § 19-3-304(3.5).  Ms. Jurinsky does not explain why Ms. Niceta's failure to comply with her obligations under this statute constitutes an action under state law.

6

could have done by anonymously contacting ACDHS.[4] *See Schaffer,* 814 F.3d at 1156 (holding that law enforcement officers who lied in witness statements and at a probable cause hearing were not acting under color of state law because "any citizen can report suspicious activity to the police and repeat that testimony in court").  Therefore, Ms. Niceta was not acting under color of state law when she made the false report.

The complaint also alleges that Ms. Niceta "attempted to interfere with the investigation when she requested that this investigation be assigned to her," and that she "either accessed or attempted to access –for the purposes of altering, destroying, or fabricating evidence– [ ] ACDHS's investigatory file and other documents associated with its internal reporting system."  Docket No. 17 at 13-14, ¶¶ 53-54.  Unlike Ms. Niceta's telephone call to a public hotline, these actions are not ones that any citizen could take.  However, the Tenth Circuit has held that, where the actions of an official "clearly fall within 'the gambit of their personal pursuits,'" those actions cannot be considered acts under color of state law.  *Haines v. Fisher,* 82 F.3d 1503, 1508 (10th Cir. 1996) (holding that police officers were not acting under color of state law when they staged a prank robbery of plaintiff for personal motives); *see also Screws v. United States*, 325 U.S. 91, 111 (1945) (holding that "under 'color' of law means under

---

[4] Ms. Jurinsky's response claims that the affidavit of probable cause for arrest warrant in Ms. Niceta's criminal case states that Ms. Niceta "utilized her 'County issued laptop' to perform critical research related to the call just prior to making it."  Docket No. 33 at 2 (citing Docket No. 33-1).  As discussed above, the Court will not consider the affidavit because it is a document not referenced in the complaint.  However, even if the Court were to consider it, the allegation that Ms. Niceta used a "County issued laptop" to perform research prior to anonymously contacting ACDHS would not render the anonymous call an action taken under color of state law, since Ms. Jurinsky does not allege that the research was an action beyond what any other citizen could have done. *See Schaffer,* 814 F.3d at 1156.

7

'pretense' of law," and contrasting a situation in which "an officer not authorized to act nevertheless takes action" with a situation where an officer oversteps the line of his authority while performing his official duties). Interfering with an investigation and altering, destroying, or fabricating evidence are plainly not part of a caseworker's official duties. Instead, these actions fall within the gambit of Ms. Niceta's personal pursuits. *See Haines*, 82 F.3d at 1508. Accordingly, the complaint's allegations that Ms. Niceta attempted to have the investigation transferred to her and accessed or attempted to access official files for improper purposes do not plausibly allege that Ms. Niceta acted under color of state law.

Moreover, even if the complaint did plausibly allege[5] that Ms. Niceta acted under color of state law,[6] it still fails to state a claim under § 1983 based on Ms. Niceta's actions. As stated above, a plaintiff bringing a § 1983 claim must allege that she was deprived of a right secured by the Constitution or laws of the United States. *Sullivan*, 526 U.S. at 49-50. Here, Ms. Jurinsky has not alleged that ACDHS filed a dependency and neglect petition against her or that she was separated from her son as a result of Ms. Niceta's actions.[7] Moreover, although the complaint alleges that Ms. Niceta

---

[5] The complaint's allegation that Ms. Niceta "made the call [to ACDHS] in the course and scope of her employment," Docket No. 17 at 11, ¶ 38, is a legal conclusion which the Court will not consider for purposes of ruling on the motion to dismiss. *See Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("[W]e are not bound by conclusory allegations, unwarranted inferences, or legal conclusions.").

[6] Ms. Jurinsky argues that, even if Ms. Niceta was not acting under color of state law, Ms. Niceta should nonetheless be deemed a state actor subject to constitutional liability. Docket No. 33 at 3. However, as described below, this argument is moot because the complaint fails to allege an injury that would give rise to a claim under § 1983, even if Ms. Niceta's actions could be imputed to the state.

[7] Ms. Jurinsky argues that she can maintain a "reckless investigation claim," based on the holdings of *Barham v. Town of Greybull Wyoming*, 483 F. App'x 506, 509 (10th Cir. 2012) (unpublished), and *Ganley v. Jojola*, 402 F. Supp. 3d. 1021, 1090

"attempted to interfere with the investigation when she requested that this investigation be assigned to her" and "either accessed or attempted to access" ACDHS's investigatory file and other documents for improper purposes, Docket No. 17 at 13-14, ¶¶ 53-54, it does not allege that these attempts (whether successful or not) resulted in any constitutional injury to Ms. Jurinsky.

Accordingly, Ms. Jurinsky's complaint fails to allege that she was deprived of a right secured by the Constitution or federal law as a result of Ms. Niceta's false report, attempt to have the investigation assigned to her, or accessing or attempted accessing of ACDHS documents. Thus, the complaint fails to plausibly allege an element required to sustain a § 1983 claim. See *Sullivan*, 526 U.S. at 49-50. Therefore, Ms. Jurinsky's complaint does not plausibly allege any § 1983 claims on the basis of Ms. Niceta's actions. Accordingly, the Court will evaluate Ms. Jurinsky's claims only insofar as they rest on her allegations about ACDHS's actions.[8]

### C.  Procedural Due Process

Ms. Jurinsky's first claim for relief alleges a deprivation of her procedural due process rights. Docket No. 17 at 73-75, ¶¶ 517-22. A procedural due process claim "can only be maintained where there exists a constitutionally cognizable . . . interest with which the state has interfered." *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972)).

---

(D.N.M. 2019). Docket No. 33 at 7-8. However, those cases are distinguishable since the plaintiffs there were actually arrested. *Barham*, 483 F. App'x at 506; *Jojola*, 402 F. Sup. 3d. 1045. Ms. Jurinsky has cited no case holding that a plaintiff may bring a constitutional claim based on an inadequate investigation if the government took no action based on the inadequate investigation.

[8] The complaint does not allege that Ms. Dossey or the Board took any action that violated Ms. Jurinsky's constitutional rights. Docket No 17 at 10-14, ¶¶ 36-56.

9

Therefore, in order to state a procedural due process claim, a plaintiff must satisfy two elements: "(1) a constitutionally protected liberty or property interest, and (2) a governmental failure to provide an appropriate level of process." *Citizen Center v. Gessler*, 770 F.3d 900, 916 (10th Cir. 2014) (citing *Couture v. Bd. of Educ. of Albuquerque Pub. Sch.*, 535 F.3d 1243, 1256 (10th Cir. 2008)).

The complaint makes the following allegations concerning ACDHS's handling of the anonymous report by Ms. Niceta: (1) ACDHS did not attempt to interview the tipster, identify witnesses to the alleged abuse, interview those witnesses, or investigate why the tipster provided an outdated address for Ms. Jurinsky; (2) ACDHS contacted Ms. Jurinsky, who informed ACDHS of her suspicions about a false tip; (3) ACDHS did not turn over Ms. Jurinsky's allegations of false reporting to law enforcement; (4) ACDHS did not investigate the individual that Ms. Jurinsky identified as a potential source of false reports; and (5) ACDHS did not conduct any internal investigation regarding Ms. Niceta's involvement in the anonymous tip. Docket No. 17 at 12-13, ¶¶ 41-42, 44-45, 48-49, 52. As discussed above, the complaint does not allege that ACDHS filed a dependency and neglect petition against Ms. Jurinsky or separated her from her son.

Ms. Jurinsky argues that the complaint states a claim for violation of her procedural due process rights because it sufficiently alleges that the defendant "procedurally deprived her of her right to family integrity." Docket No. 33 at 9. However, by failing to allege that a petition was filed or separation occurred, the complaint fails to allege that ACDHS "interfered" with a constitutional cognizable interest. Therefore, the complaint fails to allege a procedural due process claim based on a violation of Ms. Jurinsky's right to family integrity. *Steffey,* 461 F.3d at 1221.

Ms. Jurinsky argues that her complaint shows that the defendants "violated the procedural due process requirement of [Colo. Rev. Stat.] § 19-3-308(2)(a), which requires Defendants to assess 'the credibility of the source or the report' of a child abuse allegation." Docket No. 33 at 9 (quoting Colo. Rev. Stat. § 19-3-308(2)(a)) (alteration omitted). However, "plaintiffs cannot rely on state statutes to create a federal constitutional claim." *Flanagan v. Munger*, 890 F.2d 1557, 1571 (10th Cir. 1989); *see also J.B. v. Washington Cnty.*, 905 F. Supp. 979, 986 (D. Utah 1995), *aff'd* 127 F.3d 919 (10th Cir. 1997) (holding that defendant's failure to comply with the Utah Rules of Civil Procedure and the Utah Juvenile Court Rules of Practice before removing a child from her parents did not give rise to a federal procedural due process claim). Accordingly, even if the allegations in the complaint concerning ACDHS's failure to assess the credibility of Ms. Niceta's report state a claim that ACDHS violated Colo. Rev. Stat. § 19-3-308(2)(a), the complaint does not state a claim for a violation of Ms. Jurinsky's federal due process rights.

Finally, Ms. Jurinsky's complaint alleges a procedural due process violation based on the "fail[ure] to report allegations regarding the falsity of a child abuse and neglect complaint to law enforcement authorities." Docket No. 17 at 74, ¶ 521. The complaint alleges that "ACDHS failed to turn over [Ms. Jurinsky's] allegations regarding false reporting to the appropriate law enforcement authorities." *Id.* at 12, ¶ 48. However, this allegation does not state a claim for a violation of procedural due process since a plaintiff does not have a constitutional interest in law enforcement action against a third party. *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 767-68 (2005) ("the benefit that a third party may receive from having someone else arrested for a crime

11

generally does not trigger protections under the Due Process Clause, neither in is procedural nor in its 'substantive' manifestations"); *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990) (holding that plaintiff "pleads no fact showing an actionable wrong" by alleging defendant sheriff refused to file criminal charges against a third party because plaintiff "does not have a constitutional right to have someone criminally prosecuted"). Thus, the allegation that ACDHS failed to turn over allegations of false reports to law enforcement does not state a claim for violation of Ms. Jurinsky's due process rights. Therefore, the Court will dismiss Ms. Jurinsky's first cause of action.

### D.  Substantive Due Process

Ms. Jurinsky's second cause of action alleges a violation of her substantive due process rights.  Docket No. 17 at 75-76, ¶¶ 523-29.  To state a substantive due process claim for interference with the right to familial association, plaintiffs must allege "(1) that the 'defendants intended to deprive the plaintiffs of their protected relationship' with a family member, and (2) that 'balancing the plaintiffs' interest in their protected relationship against the state's interest in the family member's health and safety, defendants either unduly burdened plaintiffs' protected relationship or effected an unwarranted intrusion into that relationship.'"  *Halley v. Huckaby*, 902 F.3d 1136, 1153-54 (10th Cir. 2018) (quoting *Thomas v. Kaven,* 765 F.3d 1183, 1196 (10th Cir. 2014)) (alterations omitted).  As discussed above, Ms. Jurinsky's complaint does not allege that an investigation took place or that she was separated from her son.  Accordingly, her complaint does not plausibly allege that defendants "unduly burdened" or "effected an unwarranted intrusion into" her relationship with her son.  *See id.* at 1154.  Therefore,

Ms. Jurinsky's complaint fails to state a claim for violation of her substantive due process rights. The Court will dismiss Ms. Jurinsky's second cause of action.

### E.  Equal Protection Claim

Ms. Jurinsky's fourth cause of action alleges a deprivation of rights protected by the Equal Protection clause. Docket No. 17 at 79-82, ¶¶ 537-546. The complaint alleges that defendants treated Ms. Jurinsky differently than other similarly situated individuals and families. *Id.* at 80, ¶¶ 538-39. This claim fails for two reasons. First, the complaint alleges that defendants "did not separate or attempt to separate children involved in other investigations from their parents or caretakers" when dealing with individuals and families similarly situated to Ms. Jurinsky. *Id.* at 81, ¶ 543. The complaint also alleges that defendants "treated [Ms. Jurinsky] and all other similarly situated individuals differently than it treated other individuals and families it investigated in which they did remove or attempt to remove children from their parents or other caretakers." *Id.* at 80, ¶ 538. However, as discussed above, the complaint contains no allegations that defendants separated or attempted to separate Ms. Jurinsky from her son, so the complaint does not support a claim for differential treatment on this basis.

Second, the Tenth Circuit has held that to succeed on an equal protection claim based on differential treatment, a plaintiff must "establish that others, 'similarly situated in every material respect' were treated differently" without rational basis. *Kan. Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1216 (10th Cir. 2011) (quoting *Jicarilla Apache Nation v. Rio Arriba Cnty.*, 440 F.3d 1202, 1210 (10th Cir. 2006)). Ms. Jurinsky's only allegation related to this requirement is an allegation that "[d]efendants treated individuals other than [Ms. Jurinsky] . . . more favorably when they did not separate or

attempt to separate children involved in other investigations from their parents or caretakers." Docket No. 17 at 81, ¶ 543.  The complaint does not identify any such individuals or provide any factual allegations supporting the claim that similarly situated individuals were treated differently from Ms. Jurinsky.  Therefore, Ms. Jurinsky has failed to plausibly allege a claim for differential treatment in violation of the Equal Protection Clause.  Therefore, the Court will dismiss Ms. Jurinsky's fourth cause of action.

### F.  Section 1983 Claim

Ms. Jurinsky's third cause of action alleges a violation of 42 U.S.C. § 1983.  *Id.* at 76-79, ¶¶ 530-36.  The complaint alleges that the defendants "unlawfully deprived [Ms. Jurinsky] . . . of [her] civil rights when they unconstitutionally deprived [Ms. Jurinsky] . . . of [her] rights to substantive and procedural due process and equal protection under the law."  *Id.* at 76, ¶ 532.  The Supreme Court has held that "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 433 U.S. 137, 144 n.3 (1979)).  Because § 1983 conveys no substantive rights, Ms. Jurinsky's failure to state claims for violations of procedural due process, substantive due process, and equal protection preclude her from bringing a claim under 42 U.S.C. § 1983.  The Court will dismiss Ms. Jurinsky's third cause of action.

### G.  Leave to Amend Complaint

Ms. Jurinsky's reply requests leave to amend her complaint to plead the contents of the affidavit of probable cause for arrest warrant in Ms. Niceta's criminal case to support Ms. Jurinsky's allegation that Ms. Niceta was acting under color of state law

when she placed the anonymous call with ACDHS. Docket No. 33 at 2-3. This request for leave to amend does not comply with the local rules, which provide that a motion "shall not be included in a response or reply to the original motion," but must instead "be filed as a separate document." D.C.COLO.LCivR 7.1(d). Ms. Jurinsky did not file a separate motion to amend her complaint. However, in the absence of futility, undue delay, bad faith or dilatory motive on the part of the plaintiff, leave to amend should be "freely given." *Foman v. Davis,* 371 U.S. 178, 182 (1962); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). However, as discussed above, even if the Court were to consider the contents of the affidavit of probable cause for arrest, the Court would still find that Ms. Jurinsky does not plausibly allege that Ms. Niceta acted under color of state law. Accordingly, permitting her to amend her complaint to plead the contents of the affidavit for this purpose would be futile, and the Court will deny her request to amend.

## IV. CONCLUSION

Therefore, it is

**ORDERED** that Defendants' Motion to Dismiss Plaintiff's Amended Complaint [Docket No. 24] is **GRANTED**. It is further

**ORDERED** that plaintiff Danielle Jurinsky's first, second, third, and fourth claims are **DISMISSED with prejudice**. It is further

**ORDERED** that this case is closed.

DATED September 26, 2023.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge